ROBERT E. LEE, APPELLEE, V. NEBRASKA STATE RACING
COMMISSION, APPELLANT.
GERTRUDE L. LEE, APPELLEE, V. NEBRASKA STATE RACING
COMMISSION, APPELLANT.

513 N.W.2d 874

Filed April 8, 1994.    Nos. S-92-525, S-92-526.

Don Stenberg, Attorney General, and L. Jay Bartel for appellant.

Michael J. Lehan, of Kelley & Lehan, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

WHITE, J.

Nebraska State Racing Commission (commission) appeals from an order of the Douglas County District Court reversing and dismissing the orders of the commission which temporarily suspended appellee Robert E. Lee's license as trainer-owner and appellee Gertrude L. Lee's license as groom. We affirm the decision of the district court.

Robert Lee was charged with violating Nebraska State Racing Commission rule 18.018, unauthorized use of a hypodermic needle. Gertrude Lee was charged with violating Nebraska State Racing Commission rule 18.001, engaging in dishonest or corrupt practices, fraudulent acts, or other

conduct detrimental to racing. These charges stemmed from an incident which occurred on July 18, 1991, at Ak-Sar-Ben racing complex.

On July 18, 1991, State Trooper John White was summoned to Ak-Sar-Ben racing complex by a commission investigator to assist in an investigation. White was directed to stall 1, which housed the Lees' horse, Tree Date. From another stall, White observed the activities in stall 1. During this surveillance, White saw Gertrude Lee hold Tree Date's head while Robert Lee appeared to administer an injection into Tree Date's neck. White observed Robert Lee with a syringe, but never saw a hypodermic needle. Because of the positioning of Robert Lee, White was unable to observe exactly what Robert Lee did to Tree Date with the syringe.

White then observed the Lees enter a tack room and close the door. After a few minutes, they emerged from the room and White approached them. After White identified himself and stated his purpose for being there, Robert Lee produced an oral syringe which he stated was the one White saw him use to administer cough medicine to Tree Date.

Shortly thereafter, commission investigators, who were called to the barn by White, conducted an extensive search for the hypodermic needle that Robert Lee had allegedly used. The search included the barn, all four tack rooms, Tree Date's stall, the area surrounding the barn, all of the nearby trash bins, and the Lees' car. No physical search of the Lees was conducted. The investigators, however, could not find a hypodermic needle. A state veterinarian was called to examine Tree Date, and he took a blood sample approximately 30 minutes after White observed the alleged injection.

Subsequently, the commission held a hearing to determine whether the Lees violated the rules. Several veterinarians and chemists testified at the commission hearing regarding the probability that the blood samples taken from Tree Date could establish whether the medicine administered to Tree Date was given orally or intravenously. These witnesses agreed that the blood sample contained the drug phenylbutazone; however, they disagreed on whether the blood samples could establish how the drug had been administered. The presence of

phenylbutazone in Tree Date's blood does not constitute a violation of the commission's rules or the laws of this state.

The commission issued two orders dated October 9, 1991. In one order, the commission found that Robert Lee violated rule 18.018. Rule 18.018 provides in relevant part:

> The use of hypodermic needles is hereby forbidden, except when used by a veterinarian licensed by the State of Nebraska or the written permission of either the Stewards or the Racing Commission. Possession of such equipment or any accessories thereto is forbidden unless permission has been secured from the Stewards or the authorized representative of the Commission, in writing.

294 Neb. Admin. Code, ch. 18, § 018 (1984). The commission ordered that Robert Lee's license as an owner-trainer be suspended from August 22 through October 3, 1991, and that his license be restored in good standing after the suspension period. In the other order, the commission found that Gertrude Lee had violated rule 18.001. Rule 18.001 provides in relevant part:

> All persons guilty of any dishonest or corrupt practices, fraudulent, or other conduct detrimental to racing, including bookmaking or touting, committed while within or without any racing enclosures, either a licensee or not, shall be ruled off all racing enclosures under the jurisdiction of the Commission and it shall be the duty of Stewards and those authorized by them to exclude from all places under their jurisdiction persons who commit such offenses or are so ruled off.

294 Neb. Admin. Code, ch. 18, § 001 (1984). The commission ordered that Gertrude's Lee's license as a groom be suspended from August 22 through October 3, 1991, and that her license be restored in good standing after the suspension period.

The Lees filed petitions for review in district court, challenging the orders of the commission pursuant to Neb. Rev. Stat. § 84-917 (Cum. Supp. 1992). After conducting a de novo review of the record in accordance with § 84-917(5)(a), the district court reversed the commission's order and dismissed the charges. The court, in its journal entry, stated that "the Court finds that the investigating officer never saw a hypodermic

needle and that none was recovered." The commission timely filed a notice of appeal.

The commission contends that the district court erred in reversing the commission's suspension orders because the reversals were based on the findings by the district court that the Lees were not seen using a needle and because no needle was ever recovered.

When the petition instituting review pursuant to the Administrative Procedure Act is filed in the district court on or after July 1, 1989, the review by the district court shall be de novo on the record. § 84-917(5)(a); *Bell Fed. Credit Union v. Christianson*, 244 Neb. 267, 505 N.W.2d 710 (1993); *Davis v. Wright*, 243 Neb. 931, 503 N.W.2d 814 (1993). The final order rendered by the district court may be reversed, vacated, or modified by the Supreme Court or the Court of Appeals for errors appearing on the record. Neb. Rev. Stat. § 84-918(3) (Cum. Supp. 1992); *Christianson, supra*; *Davis, supra*. When reviewing an order for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Davis, supra*; *Stratbucker Children's Trust v. Zoning Bd. of Appeals*, 243 Neb. 68, 497 N.W.2d 671 (1993).

The commission contends that the decision of the district court is "plainly erroneous." Brief for appellant at 11. The commission argues that the district court reversed the commission's orders for the wrong reason. Specifically, the commission states that the only reason supporting the district court's decision was the lack of direct evidence—no one observed Robert Lee use a needle and no needle was recovered. The commission then contends that there is overwhelming circumstantial evidence in the record such that the only conclusion the court should have reached is that the Lees violated rules 18.018 and 18.001.

The statement of the district court in its journal entry is itself irrelevant to whether the court committed error appearing in the record. In our review of the district court's decision, we shall not overanalyze the purported reasons supporting that decision. The proper scope of our review is whether the decision

of the district court is supported by the law and the record.

After a review of the record, we find that the decision of the district court is consistent with applicable law, supported by the record, and neither arbitrary, capricious, nor unreasonable. We therefore affirm the decision of the district court.

AFFIRMED.